# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

I.G., *a minor, by and through his*
*parents and next friends*, R.G. and L.G.,

      Plaintiffs,

v.                                           Civ. No. 18-124 KK/KBM

BOARD OF EDUCATION OF THE
AZTEC MUNICIPAL SCHOOL
DISTRICT; KIRK CARPENTER;
KIMBERLY GARCIA; SHANE
KIRKLAND,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER[1]</u>

**THIS MATTER** is before the Court on Defendants Board of Education of the Aztec

Municipal School District, Kirk Carpenter and Kimberly Garcia's Motion to Dismiss and for

Qualified Immunity and Memorandum in Support Thereof (Doc. 8), filed February 14, 2018. In

the Motion, the Board of Education of the Aztec Municipal School District ("School Board"),

Kirk Carpenter, and Kimberly Garcia (collectively "School Defendants") argue that all claims

brought against them in Plaintiffs' Complaint for Damages for Deprivation of Civil Rights,

Personal Injuries, New Mexico Tort Claims Act Violations, and Violations of New Mexico

Common Law (Doc. 1-2), filed February 7, 2018 should be dismissed pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure for failure to state a claim. (Doc. 8 at 1, 2-3, 7-34.)

Additionally, as to the Section 1983 claims brought against Ms. Garcia and Mr. Carpenter in

their individual capacities, Defendants seek dismissal on qualified immunity grounds. (Id.)

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter judgment in this case. (Docs. 13-15.)

Finally, School Defendants argue that any claims brought by R.G. and L.G. (the parents of the minor Plaintiff) on their own behalf should be dismissed. (Id.) Having considered School Defendants' arguments, the record, and the relevant law, the Court concludes that their Motion to Dismiss shall be granted in part and denied in part.

## I.     LEGAL STANDARDS

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement required by Rule 8(a)(2) must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2003) (per curium).

The Court may dismiss a complaint under Rule 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ramirez v. Dep't of Corr., Colo.*, 222 F.3d 1238, 1240 (10th Cir. 2000) (quotation omitted). A complaint will withstand a motion to dismiss under Rule 12(b)(6) if it contains allegations of fact which, taken as true, "state a claim to relief that is plausible on its face." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007). "In determining the plausibility of a claim, [the Court] look[s] to the elements of the particular cause of action, keeping in mind that the Rule 12(b)(6) standard [does not] require a plaintiff to set forth a prima facie case for each element. The nature and specificity of the allegations required to state a plausible claim will vary based on context. But mere labels and conclusions and a formulaic recitation of the elements of a cause of action will not suffice; a plaintiff must offer specific factual allegations to

support each claim." *Safe Streets All. V. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (internal quotation marks and citations omitted). "Thus, a claim is facially plausible if the plaintiff has pled factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II.    FACTUAL AND PROCEDURAL BACKGROUND

For the purpose of ruling on School Defendants' motion to dismiss, the Court assumes that the following facts, taken from the complaint, are true.

Plaintiff I.G. is a minor, a resident of San Juan County, New Mexico, and during the time frame relevant this lawsuit, he was a student at Aztec High School, in Aztec, New Mexico. (Doc. 1-2 at ¶¶ 1, 10, 21.) Defendant Shane Kirkland, an employee of Defendant Aztec Municipal School District (the School District), was I.G.'s theater teacher. (Id. at ¶¶ 2, 13.) Defendant Kimberly Garcia, also an employee of the School District, is an administrative assistant/secretary at Aztec High School. (Id. at ¶ 5.) Defendant Kirk Carpenter, is the superintendent of the School District, and in that capacity, he is the final decision maker and policy maker for the School District with authority to hire teachers, administrative assistants, and employees of the athletic program. (Id. at ¶ 3.) Mr. Carpenter was also the immediate supervisor of Defendant Kirkland and is Ms. Garcia's direct supervisor. (Id. at ¶ 3.)

The events giving rise to this lawsuit occurred between April 27, 2016 and September 26, 2016. (Id. at ¶ 13.) Beginning in April 2016, Defendant Kirkland began "grooming" I.G. for sexual abuse during and after school hours. (Id.) The grooming entailed Defendant Kirkland keeping I.G. long after school was out relying on the High School theater program as pretext, and showing his erect penis to I.G. (Id.) Defendant Kirkland would send I.G. home with "signed excuses" regarding I.G.'s whereabouts in furtherance of his efforts to groom and

sexually abuse I.G. (Id.) Eventually, Defendant Kirkland brought I.G. to his house and sexually abused him. (Id.) Although it is unclear how many instances of sexual abuse occurred at Defendant Kirkland's home, on at least one occasion, Defendant Kirkland took I.G. from school to his house during school hours for that purpose. (Id.)

Defendant Kirkland had a history of "inappropriate social media postings, constant mixing of school and personal business, including, but not limited to, sending students out with his credit cards to buy personal items." (Id. at ¶ 14.)

I.G.'s grades suffered because he was sexually abused by Defendant Kirkland. (Id. at ¶ 15) The School District and Mr. Carpenter maintain a grades-related eligibility requirement for students who wish to participate in sports. (Id..) The School District and Mr. Carpenter refused to exempt I.G. from the grades-related eligibility requirement, therefore making it "impossible for I.G. to participate in school athletic activities." (Id.) I.G.'s ineligibility to participate in sports exacerbated the humiliation and "emotional abuse" that I.G. experienced in connection with the sexual abuse. [2]

Defendant Kirkland was charged with two counts of criminal sexual penetration of a minor arising out of the sexual abuse that he committed against I.G. (Id. at ¶ 16.) The day before Defendant Kirkland's first scheduled court appearance related to these criminal charges, Ms. Garcia sent a text message to the president of the High School's junior class requesting that he gather as many students as possible and make signs supporting Defendant Kirkland. (Id.) Ms. Garcia's purpose was to intimidate I.G. and to interfere with or publicly influence the outcome of Defendant Kirkland's preliminary hearing. (Id.) In her text message to the junior

---

[2] Paragraph 15 of Plaintiffs' Complaint reads as follows: "[The School District] and Carpenter compounded the horrifying acts of Kirkland by maintaining an unreasonable standard for grade eligibility for sports without accommodation for the abuse conducted by Kirkland. [The School District] and Carpenter made in (sic) impossible for I.G. to participate in school athletic activities due to Kirkland's' conduct, which caused further humiliation and emotional abuse of I.G."

class president, Ms. Garcia referred to I.G. as a "butt head." (Id.) Ms. Garcia's text message also instructed students as to how they could obtain an excuse from school to attend the preliminary hearing. (Id.)

The junior class president posted Ms. Garcia's text message on Snapchat and on Instagram (on which site the student had over 1100 followers most of whom were students at Aztec High School), and urged other students to attend Defendant Kirkland's preliminary hearing. (Id.) At least two dozen Aztec High School students attended Defendant Kirkland's preliminary hearing and carried signs demonstrating their support for him. (Id.) These students were so disruptive to the court proceedings that the judge was forced to close the hearing. (Id.) Additionally, in response to this disruption, the San Juan County Deputy District Attorney stated that it appeared that the students "were attempting to intimidate the victim [and] that had a negative impact on the administration of justice." (Id.)

When Mr. Carpenter learned about Ms. Garcia's text message, he defended Ms. Garcia and "supported her right to 'act as an individual.'" (Id. at ¶ 18.) Mr. Carpenter also stated that the school would conduct an investigation to determine whether Ms. Garcia had violated school district policy. (Id.) Plaintiffs have not received further information regarding the status or results of the investigation; however, neither Defendant Kirkland nor Ms. Garcia was disciplined. (Id. at ¶¶ 18-19.) Almost all of this information was published in an article in the Aztec newspaper, *The Daily Times*, on Sunday, September 25, 2016. (Id. at ¶ 20.) The community of Aztec recognized that Plaintiffs were the subject of the article. (Id.)

The compounded effects of the sexual abuse perpetrated against I.G. by Defendant Kirkland and the intimidation and public humiliation suffered by I.G. and his family as a result

of Defendants' aforementioned actions led I.G. to quit Aztec High School and attend high school in another state. (Id. ¶ 21.)

Based upon the foregoing, Plaintiffs filed a nine-count Complaint claiming: (1) that Defendants' actions violated I.G.'s Fourteenth Amendment right to due process; (2) that as a result of the School District's and Mr. Carpenter's failure to adequately supervise Defendant Kirkland and Ms. Garcia, I.G. was deprived of his Fourteenth Amendment right to bodily integrity; (3) that the School District's failure to adopt, publish and promulgate appropriate policies regarding harassment and sexual abuse deprived Plaintiffs of benefits under Title IX, and subjected them to discrimination in violation of the same; (4) that Defendants, acting under color of state law, conspired and agreed to deprive Plaintiffs of their Fourteenth Amendment right to be free from intrusions into their bodily integrity and reputation; (5) that the School District, Mr. Carpenter and Mr. Garcia intentionally violated I.G's rights of privacy under the Educational Rights and Privacy Act of 1974 and its state analog, NMSA 1978, Section 24-1-20, which prohibit the disclosure of private information concerning students' health; (6) that, contrary to the New Mexico Tort Claims Act, Defendants violated their duty of reasonable care in regard to the maintenance of school premises, and failed to implement proper safety policies and protocols which failure created a dangerous condition on the premises; (7) that contrary to the New Mexico Tort Claims Act, the School District and Mr. Carpenter breached their duty of ordinary care in regard to screening, hiring, training, supervising, and monitoring employees to ensure they were competent to reasonably care for students; (8) that, contrary to the New Mexico Tort Claims Act, the School District and Mr. Carpenter conspired and agreed to cover up and conceal the wrongdoing that led to Plaintiffs' injuries; and (9) that the School District is jointly and severally liable for all injuries and damages caused by the actions of its officials and its

employees pursuant to the doctrine of vicarious liability under the New Mexico Tort Claims Act. Plaintiff's complaint, originally filed in the Eleventh Judicial District Court, County of San Juan, State of New Mexico, was timely removed to this Court on February 7, 2018.  (Doc. 1.)

## III.    ANALYSIS

### A.  PLAINTIFFS R.G.'s and L.G.'s INDIVIDUAL CLAIMS ARE DISMISSED

To the extent that Plaintiffs' Complaint which contains references to "each Plaintiff" is intended to present individual claims by I.G.'s parents for harms they suffered, (separate and apart from their being named as parents and next friends of I.G.), their claims are dismissed without prejudice for failure to state a claim on which relief may be granted.  "[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it, how the defendant's actions harmed him or her; and, what specific legal right the plaintiff believes the defendant violated."  *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).  Plaintiff R.G. and L.G. have utterly failed to satisfy basic notice pleading requirements, and their individual claims (if any)[3] are dismissed without prejudice.   The Court will afford Plaintiffs an opportunity to seek leave to amend the Complaint by a motion attaching the proposed amended complaint, within thirty days of the date of this Memorandum Opinion and Order's entry to state claims, if any, on behalf of R.G. and L.G. individually on which relief may be granted.   The proposed amended complaint must make "clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original).  Failure to timely move to amend the complaint may result in dismissal without prejudice of the action by R.G. and L.G. without further notice.

---

[3] The Court cannot escape the many signs pointing to Plaintiffs' Complaint having been cut and pasted from an unrelated case's complaint, and so it may be that counsel's apparent lack of careful editing is the only reason that the Complaint appears in each count to assert individual claims on behalf of R.G. and L.G.

*See* Fed. R. Civ. P. 41(b) (providing for involuntary dismissal "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order").

### B. PLAINTIFFS' FOURTEENTH AMENDMENT DUE PROCESS CLAIMS

Plaintiffs first, second, and fourth claims are brought against School Defendants pursuant to 42 U.S.C. Section 1983, and are premised on violations of the Fourteenth Amendment. To state a valid cause of action under section 1983, a complaint must allege that the defendant acted under color of state law to deprive the plaintiff of a right secured by the constitution and laws of the United States. *Hill v. Ibarra*, 954 F.2d 1516, 1520 (10th Cir. 1992). Plaintiffs' Complaint appears to the Court to assert violations of I.G.'s Fourteenth Amendment rights to bodily integrity, freedom from reputational harm, and right to privacy. Thus, the Court must determine whether these are rights secured by the Constitution because if there is no constitutional right, it does not matter what facts have been provided as there can be no § 1983 claim.

"The Fourteenth Amendment prohibits any state deprivation of life, liberty, or property without due process of law." *Ingraham v. Wright*, 430 U.S. 651, 672 (1977). Due process protections supply both substantive and procedural constraints. Substantive due process protects individuals from deliberate and constitutionally arbitrary governmental interference with fundamental rights irrespective of the applicable procedural protections. *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992); *Skinner v. Oklahoma*, 316 U.S. 535, 536-537, 541 (1942); *Griswold v. Connecticut*, 381 U.S. 479, 486-88 (1965) (Goldberg concurring). "Only the most egregious official conduct" that "shocks the conscience," will subject the government to liability for a substantive due process violation. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). "[T]he measure of what is conscience-shocking is no calibrated yard stick" and whether a specific act of a government officer "shocks the conscience" depends on her state of mind and

the context in which the action is taken. *Id.* at 847, 854; *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008) ("[D]eliberate government action that is arbitrary and unrestrained by the established principles of private right and distributive justice" is shocking to the judicial conscience.") "Deliberate indifference" can support substantive due process liability in situations where the government owes a special duty of care to those in its charge. *Id.* at 849-50. Substantive Due Process "is not a guarantee against incorrect or ill-advised . . . decisions", *Bishop v. Wood*, 429 U.S. 341-350 (1976), and "extreme verbal abuse typically is insufficient to establish a constitutional deprivation" of substantive due process. *Abeyta v. Chama Valley Independent School District*, No. 19, 77 F.3d 1253, 1256 (10th Cir. 1996) (holding that teacher's conduct in calling twelve-year-old female student a prostitute in front of the class over a month-and-a-half period was not so severe as to shock the conscience and be actionable under section 1983 as substantive due process violation.)[4] Ordinary torts and mere negligence without more do not give rise to substantive due process violations. *See Paul v. Davis*, 424 U.S. 693, 701 (1976) (stating Fourteenth Amendment is not "a font of tort law to be superimposed upon whatever systems may already be administered by the States"); *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *County of Sacramento v. Lewis*, 523 U.S. at 849; *Abeyta*, 77 F.3d at 1257.

Procedural due process by contrast concerns procedural constraints on the manner in which the Government may deprive persons of rights or entitlements. The Tenth Circuit employs a two-step test when evaluating whether a citizen's right to procedural due process has

---

[4] In *Abeyta v. Chama Valley Independent School District*, No. 19, 77 F.3d 1253, the Tenth Circuit was "unwilling to hold that actions which inflict only psychological damage may never achieve the high level of 'a brutal and inhuman abuse of official power literally shocking to the conscience," necessary to constitute a substantive due process violation[,]" and could "imagine a case where psychological harassment might be so severe that it would amount to torture." Nevertheless, while strongly condemning the "complete abuse of . . . authority" and "flagrant misconduct" reflected in the teacher's actions of repeatedly calling his twelve-year-old female student a prostitute in class, "whether . . . done with indifference or with deliberate intent to cause psychological harm," the Tenth Circuit could not identify a cognizable constitutional violation and had "to leave plaintiff to whatever relief statutory or state tort law may afford her." *Id.* at 1258.

been violated: "(1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" *Clark v. City of Draper*, 168 F.3d 1185, 1189 (10th Cir. 1999) (quoting *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998)).  Whether the process afforded is deemed sufficient will vary with the facts of a particular case, and courts apply a balancing test that "consider[s] the private interest involved, the risk of erroneous deprivation resulting from the procedures used, the probable value of additional procedural safeguards, and the government's interest in efficient procedures."  *Clark*, 168 F.3d at 1189; *Mathews v. Eldridge*, 424 U.S. 319 (1976).

### 1. <u>First Cause of Action Against School Defendants</u>[5]

In his First Cause of Action, brought against all Defendants, Plaintiff I.G. seeks to hold Defendants liable for the sexual abuse perpetrated against him by Defendant Kirkland and for the invasion of his privacy and resulting public humiliation and reputational harm he suffered as a result of Defendant Garcia's actions. (Doc. 1-8 at p. 5-6, 8-9.)  The Court first considers the sexual abuse-centered claims as against the School Defendants before turning to the privacy and reputation-centered claims against them.

#### i. <u>State-Created Danger Theory Related to the Sexual Abuse</u>

Seeking to hold School Defendants liable for the sexual abuse I.G. suffered, Plaintiffs allege these Defendants had a duty to refrain from engaging in reckless or deliberate conduct that could cause harm to Plaintiffs, that they had a constitutional duty to refrain from conduct that subjected I.G. to sexual abuse by Defendant Kirkland, and that they had a duty to "avoid taking action [that] increased the danger of or vulnerability to such acts beyond the level it would have been absent their conduct."  (Doc. 1-2 at ¶¶ 24-25.)  They claim that because School Defendants

---

[5] I.G.'s claims against Defendant Kirkland are not impacted by the Court's rulings here.

breached these duties, I.G.'s Fourteenth Amendment rights to bodily integrity and to be free from sexual assault were violated. Although the Complaint does not specifically identify a theory of recovery beyond the allegations of duty, breach, and the substantive due process protections of the Fourteenth Amendment, it is reasonably apparent that the claims against School Defendants in the First Cause of Action arising out of the sexual abuse by Defendant Kirkland are brought pursuant to a theory of state-created danger.[6] (*Id.* at ¶¶ 24-30.)

Because the Due Process Clause does not impose an affirmative obligation on the State to ensure that an individual's life, liberty and property interests do not come to harm through third-party means, a State's failure to protect an individual against private violence does not constitute a violation of due process. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195, 197 (1989). State actors may generally "only be held liable . . . for their own acts, not for the acts of third parties." *Robbins v. Okla.*, 519 F.3d 1242, 1251 (10th Cir. 2008). There are two recognized exceptions to the foregoing general principles—the "special relationship" exception and the "danger creation" exception. The "special relationship" exception applies in circumstances in which the state has placed some restraint on the plaintiff's personal liberty as, for example, in a circumstance in which the state incarcerates or institutionalizes someone. *DeShaney*, 489 U.S. at 199-200 ("[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself" an affirmative duty to protect arises from the limitation that the state has imposed on his freedom to act on his own

---

[6] Defendants address the issue of state-created danger in their Motion to Dismiss, but Plaintiffs' response accuses Defendants of "go[ing] off on a tangent when arguing 'private violence' precedent in this case." (Doc. 19 at 8.) Although the issue of private violence may well be tangential to the circumstances giving rise to Plaintiffs' Complaint, it is Plaintiffs' clear invocation, in their First Cause of Action, of a state-created danger theory that have led Defendants and the Court to address the issue. (Doc. 1-2 at ¶¶ 23-30.) Because the Court must consider all of the claims raised in Plaintiffs' Complaint, instead of construing Plaintiffs' "tangent" argument as a concession that they cannot prevail on a state-created danger theory, the Court has addressed the viability of this claim. Plaintiffs' counsel should conserve its own, opposing counsels', and the Court's time and resources by carefully and thoughtfully drafting future complaints to avoid tangential issues.

behalf.); *Armijo ex rel Chavez v. Wagon Mound Pub. Schs.*, 159 F.3d 1253, 1261 (10th Cir. 1998). The special relationship exception does not apply to the relationship between public schools and school children, and it is not relevant here. *See Armijo*, 159 F.3d at 1261 ("Compulsory attendance laws for public schools . . . do not create an affirmative constitutional duty to protect students from the private actions of third parties while they attend school"; thus, absent evidence that a school restrained a student's liberty in a "custodial" manner, there is no "special relationship" as that phrase is used in the Fourteenth Amendment context between the student and the school).

The "danger creation" exception provides that a state may be held liable for harm that befalls an individual if the state "created the danger" that led to the harm. *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995); *Robbins*, 519 F.3d at 1251 ("[A]bsent some affirmative act that incurred a duty to protect," state actors cannot be held liable for failure to protect the plaintiff from harm). Because the state-created danger doctrine necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger, inaction in the face of some foreseeable harm is not sufficient to trigger this exception. *Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 916-17 (10th Cir. 2012). To prevail on a danger creation theory, the plaintiff must prove that:

> (1) the state entity and individual actors created the danger or increased the plaintiff's vulnerability to the danger; (2) plaintiff was a member of a limited and specifically definable group; (3) defendant's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious and known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, shocks the conscience.

*Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1126 (10th Cir. 2008).

The allegations in the Complaint track the foregoing elements. Specifically, Plaintiffs allege that: Defendants actions created an immediate threat of harm to Plaintiffs,[7] and, in regard to I.G., Defendants violated a constitutional duty to "avoid taking action [that] increased the danger of or vulnerability to "sexual acts" (Doc. 1-2 at ¶¶ 25-26); Plaintiffs "were members of a particular, limited, closed group" (Doc. 1-2 at ¶ 26); "Defendants were deliberately indifferent to the known or obvious risks and consequences of their actions" (Doc. 1-2 ¶ 30); Defendants' conduct "was intentional, unreasonable, reckless, wanton, willful, and deliberately indifferent to the [Plaintiffs'] rights" (Doc. 1-2 at ¶ 32); and "Defendants placed Plaintiffs in a foreseeably dangerous position[] and[,] in the context of the situation, [their actions] were shocking to the conscience" (Doc. 1-2 ¶ 31). Additionally, Plaintiffs allege that, as a matter of clearly established law, "citizens have the right under the Fourteenth Amendment to be free from state action which affirmatively creates or exacerbate a danger to them[.]" (Doc. 1-2 at ¶ 34.)

The right to bodily integrity and the right of school children to be free from sexual assault and molestation by their school teachers are protected by the Fourteenth Amendment. *See generally Albright v. Oliver*, 510 U.S. 266, 272 (1994) (recognizing that the right to bodily integrity is protected by the substantive due process clause of the Fourteenth Amendment); *Abeyta ex rel. Martinez v. Chama Valley Indep. Sch. Dist., No. 19*, 77 F.3d 1253, 1255 (10th Cir. 1996) ("Sexual assault or molestation by a school teacher violates a student's substantive due process rights."). However, setting aside the Complaint's conclusory, vague, and non-specific allegations discussed in the preceding paragraph, the sole allegation supporting the theory that School Defendants are liable under a theory that they affirmatively placed I.G. in danger of being molested by Defendant Kirkland at his home, is that the School District and Mr. Carpenter knew

---

[7] Although the Complaint refers to the harm suffered by "Plaintiffs" the allegations of sexual abuse and intrusions upon bodily integrity are limited to those suffered by I.G. as perpetrated by Defendant Kirkland.

or should have known about Defendant Kirkland's propensity for illegal and immoral conduct with students. (Doc. 1-2 at ¶ 14.)  *See Ashcroft*, 556 U.S. at 678 ("A pleading that offers labels and conclusions[,] . . . a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement" does not plausibly state a claim upon which relief can be granted.).

Even when viewed in the light most favorable to Plaintiffs, the allegations in Plaintiffs' Complaint do not demonstrate affirmative conduct by School Defendants to create or increase I.G.'s vulnerability to sexual abuse by Defendant Kirkland at Defendant Kirkland's home.  Nor do the factual allegations demonstrate that any of the School Defendants placed I.G. in a situation where he was at a substantial risk of serious immediate and proximate harm from Defendant Kirkland, or that the risk that Defendant Kirkland would sexually abuse I.G. was "obvious and known" to any of them.  *Rost*, 511 F.3d at 1126.  Even assuming Defendant Kirkland's inappropriate social media postings and his history of permitting students to use his credit card to shop for personal items gave rise to some foreseeable risk that Defendant Kirkland's inappropriate behavior could cause some harm to students, mere inaction in the face of foreseeable harm is insufficient to trigger the state-created danger exception.  *Gray*, 672 F.3d at 916-17 (negligent conduct does not give rise to a Section 1983 claim); *see also Rost*, 511 F.3d at 1126   (holding school district could not be held liable for student-on-student sexual harassment based on a danger-creation theory for failing to enforce its sexual harassment policy and failing to remove the victim from a class that was also attended by her harassers); *Robbins*, 519 F.3d at 1251 (holding state actors could not be liable for infant's death at state-subsidized daycare center where defendants had no direct contact with infant, and plaintiffs generally alleged that defendants "were or should have been aware of [the day care owner's] personal

background"; had instructed infant's parents to place her in specific daycare; and continued to place children in the daycare instead of revoking daycare owner's operating license).

Plaintiff's First Cause of Action insofar as it seeks to hold each of the School Defendants liable for the sexual abuse perpetrated by Defendant Kirkland against I.G. fails to state a claim upon which relief can be granted and this aspect of the Complaint shall be dismissed. Because the Court finds that Plaintiffs' do not state an actionable section 1983 claim against School Defendants arising out of the sexual abuse by Defendant Kirkland, the Court will not address qualified immunity asserted by the individual Defendants.

### ii. <u>Plaintiff's Privacy Violation Claim</u>

Plaintiffs also apparently seek to hold Defendant Garcia liable under section 1983 for violating their substantive due process right to informational privacy. (Doc. 19 at 1, 8.) Specifically, Plaintiffs claim that Ms. Garcia violated I.G.'s right to privacy by sending a text message to the Aztec Junior High School class president the day before Mr. Kirkland was scheduled for a first appearance in criminal court to answer for two counts of Criminal Sexual Penetration of a minor related to his alleged sexual abuse of I.G. (Doc. 1-2 at ¶ 16, Doc. 19.) Ms. Garcia's text message was widely disseminated by the class president over Instagram to that student's over eleven hundred followers. (Doc. 1-2 at ¶ 16.) And it ultimately led to the disruptive presence of two dozen students, carrying signs in support of Mr. Kirkland, at the court hearing. (*Id.*) The two dozen students were so disruptive that the presiding judge was forced to close the hearing, which would otherwise have been open to the public. (*Id.*) As a consequence of these events, the local newspaper published an article revealing that I.G. and his parents were, respectively, the alleged victim and the parents of the alleged victim of sexual abuse by Defendant Kirkland. (Doc. 1-2 at ¶ 20.)

Construing the foregoing allegations in the light most favorable to Plaintiffs, it appears that Plaintiffs seek to recover damages for Ms. Garcia's[8] violation of I.G.'s constitutional right to control the extent to which his status as a victim of sexual abuse and the status of the criminal proceedings arising from that abuse were disseminated to his high school peers and to his community at large. Relatedly, the Court infers that Plaintiffs' claim in this regard stems, as well, from the implication expressed in Ms. Garcia's text message encouraging student support for Defendant Kirkland, that I.G.'s allegations of sexual abuse were unworthy of credence. Because Defendants have asserted that Ms. Garcia is qualifiedly immune from Plaintiff's constitutional claims, the Court considers whether Plaintiff's Fourteenth Amendment privacy claim may survive this assertion of qualified immunity.

Qualified immunity attaches when an official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. -----, 136 S.Ct. 305, 308 (2015); *Wilson v. Layne*, 526 U.S. 603, 609 (1999). When a defendant asserts a qualified immunity defense in a motion to dismiss, the Court determines (1) whether a complaint's allegations are sufficient to show that the defendant violated a constitutional or statutory right and (2) whether the constitutional or statutory right was clearly established when the alleged violation occurred. *See Peterson v. Jensen*, 371 F.3d 1199, 1202 (10th Cir. 2004). The Court has discretion to decide the order in which to engage in the two-prong qualified immunity analysis. *Tolan v. Cotton*, --- U.S. ---, 134 S.Ct. 1861, 1866

---

[8] Although not pled clearly in the Complaint, Plaintiffs also "contend that this Court's conscience should be shocked by . . . the school promot[ing] a policy of violating a student's right of privacy by publishing private information in an effort to protect the teacher that molested him." (Doc. 19 at 1.) Additionally, for the first time in their Response, and notably absent from the Complaint, is a contention that "the principal of the school," (who has not been named as a defendant in this case), "acting on behalf of the school, issued a public statement protecting the secretary who illegally published the private information that was intended to protect the molester teacher." (*Id.*) Because the complaint fails to allege any such policy and because the principal of the school is not a defendant, and there are no specific facts alleged as to the content of the alleged public statement, the Court's 12(b)(6) analysis necessarily does not address these allegations.

(2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The first inquiry is, for all practical purposes, indistinguishable from the inquiry made in assessing a garden-variety Rule 12(b)(6) challenge to the sufficiency of the pleadings. *See Saucier v. Katz,* 533 U.S. 194, 201 (2001). The "clearly established" inquiry for qualified immunity examines whether at the time of the challenged conduct, the contours of the constitutional right were so well-settled, in the particular circumstances presented, that "every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards,* 132 S. Ct. 2088, 2093 (U.S. 2012). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "'[C]learly established law' should not be defined at a high level of generality," but must instead be "'particularized' to the facts of the case.' Otherwise, [p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *White v. Pauly*, 137 S.Ct. 548, 552 (2017). In other words, qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. at 741.

The Supreme Court has long recognized the existence of a fundamental right to privacy which is protected by the due process clause of the Fourteenth Amendment. *Whalen v. Roe*, 429 U.S. 589, 598 n.23 (1977). The right to privacy protects "the individual interest in avoiding disclosure of personal matters" including, particularly, the disclosure of information that, if it becomes publicly known, might adversely affect an individual's reputation. *Id.* at 599-600. The Tenth Circuit "has repeatedly interpreted the Supreme Court's decision in *Whalen* . . . as creating a right to privacy in the non-disclosure of personal information." *Herring v. Keenan*, 218 F.3d 1171, 1175 (10th Cir. 2000). The right of personal privacy protects one's individual interest in

making important decisions relating to marriage, procreation, child rearing and education, contraception, and family relationships. *Carey v. Population Servs., Intern.*, 431 U.S. 678, 684 (1977). And it clearly protects the right to privacy in confidential medical information. *Herring v. Keenan*, 218 F.3d 1171, 1175 (10th Cir. 2000). Further, "information regarding one's body and health is a matter [that] the individual is ordinarily entitled to keep private"; and the constitutionally protected right to privacy "is implicated when an individual is forced to disclose information regarding personal sexual matters[.]" *Eastwood v. Dep't of Corr. of State of Okla.*, 846 F.2d 627, 631 (10th Cir. 1988). This right to "informational privacy" extends to minors and to adults alike. *Aid for Women v. Foulston*, 441 F.3d 1101, 1117 (10th Cir. 2006)

Importantly, however, an individual's right to privacy is limited to information in which the individual has a legitimate expectation of confidentiality. *Aid for Women*, 441 F.3d at 1116. This principle is reflected in the three-part inquiry, adopted by the Tenth Circuit for "determining whether information is of such a personal nature that it demands constitutional protection" which requires the Court to "consider (1) if the party asserting the right has a legitimate expectation of privacy, (2) if disclosure serves a compelling state interest, and (3) if disclosure can be made in the least intrusive manner." *Nilson v. Layton City*, 45 F.3d 369, 371 (10th Cir. 1995). Of particular interest in this matter is the issue of whether I.G. or his parents had a legitimate expectation of privacy in the confidentiality of the information contained in Ms. Garcia's text message.

Information that is readily available to the public—such as judicial proceedings and information contained in police reports—is not protected by the constitutional right to privacy. *Id.*; *see generally*, *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 493–95 (1975) (relying on the proposition of tort law that "[t]here is no liability when the defendant merely gives further

publicity to information about the plaintiff which is already public" in the context of a Fourteenth Amendment-based claim of infringement on the right of privacy brought by a father who sought to hold a television station liable for disseminating the name of his daughter—a deceased victim of rape). Thus, the disclosure of such information by a state actor cannot give rise to a claim for the violation of the constitutional right to privacy. *Id.* "The legitimacy of individual expectations of confidentiality must arise from the personal quality of any materials which the state possesses." *Flanagan v. Munger*, 890 F.2d 1557, 1571 (10th Cir. 1989). State statutes and the confidentiality policies of local governmental agencies do not, by themselves, create a constitutional privacy right such that they will support an individual's claim that he or she had a legitimate expectation of privacy protected by those policies. *Id.* Accordingly, "[a]llegations of a failure on the part of government officials to abide by their own assurances of confidentiality will not suffice to state a claim. Any disclosed information must itself warrant protection under constitutional standards." *Id.* (holding that the disclosure of reprimands related to police officers' ownership of a video store which were part of their "confidential" personnel files did not violate the officers' constitutionally-protected right to privacy because the reason for the reprimand (the ownership of the store) was public information and the fact of the reprimands was not information in which the offices had a legitimate expectation of privacy under the Constitution.).

Additionally, an individual does not have a constitutionally protected right to privacy in another person's opinions of him. In that regard, the Court observes that in *Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1062-63 (10th Cir. 2002), our Tenth Circuit Court of Appeals held that a teacher may not be held liable for a Fourteenth Amendment privacy violation for disclosing unfavorable information, observations, and impressions of a student. The teacher in

*Cudjoe* had described a student as lacking in social skills, stated that the student had been "held back," described the student as a "hellion" and a "bully," and stated that the student was "horrible or mean" among other things. *Id.* The *Cudjoe* court concluded that these comments did not rise to "the level of invading intimate privacies that have been recognized as part of the privacy penumbra of constitutional rights." *Id.* at 1063.

With the foregoing principles in mind, the Court considers whether I.G. has alleged facts that show that Ms. Garcia violated his constitutional right to informational privacy. *Peterson*, 371 F.3d at 1202. Turning first, to the issue of Ms. Garcia's implicit attack on I.G.'s credibility, against the backdrop of *Cudjoe*, the Court cannot conclude that Ms. Garcia's publicly disseminated suggestion that I.G. was not credible and that his alleged sexual abuser deserved student support clearly rose to the level of invading I.G's constitutionally protected right to privacy.

As to the issue of Ms. Garcia's dissemination of information to a student regarding Mr. Kirkland's impending first appearance and her disclosure of I.G.'s identity as the victim of sexual abuse, the allegations in the complaint leave many open questions. Nevertheless, viewing the allegations in the Complaint in the light most favorable to Plaintiffs, and indulging in every reasonable inference in their favor, it is reasonable to infer that Ms. Garcia learned that I.G. was allegedly sexually abused by Mr. Kirkland because, as an employee of Aztec High School, she had access to I.G.'s confidential records as well as those of Mr. Kirkland, and that owing to her proximity to school officials, she was privy to certain information about the students and the high school staff that was not publicly available. Further, for purposes of this discussion, the Court will assume that, although Mr. Kirkland's first appearance in court—a proceeding that is open to the public was imminent, at the time that Ms. Garcia sent the text message the public record did

not contain any information regarding I.G.'s status as a sex abuse victim. One's status as a victim of sexual abuse is an exceedingly intimate matter of great sensitivity and, in the Court's view, is a matter that is comparable—in the degree to which an individual has a legitimate expectation of privacy—to confidential medical information, and information regarding personal sexual matters. *See Herring*, 218 F.3d at 1175 (recognizing the constitutionally-protected right to privacy in confidential medical information); *Eastwood*, 846 F.2d at 631 ("[I]nformation regarding one's body and health is a matter [that] the individual is ordinarily entitled to keep private[.]"). Thus, the Court assumes, but does not decide, that Plaintiff overcomes the first prong of the qualified immunity analysis because Ms. Garcia's disclosure to a student of I.G.'s identity as a sexual abuse victim, and the resulting broad dissemination of I.G.'s status as a sex abuse victim constituted a violation of I.G.'s constitutionally protected informational right to privacy.

The Court next considers the second prong of the qualified immunity analysis—whether the contours of the right to informational privacy were, at the relevant time, so well-settled, that a reasonable school official would have understood that her act of disclosing I.G.'s identity as a sex abuse victim to one student on the eve of a public hearing, and advertising details to that student about Defendant Kirkland's first court appearance related to that alleged sexual abuse would violate I.G.'s right to informational privacy. *Reichle*, 132 S. Ct. at 2093. Plaintiffs have conceded that "there are no comparable cases" to the "fact pattern" in this case, (Doc. 19 at 8), and the Court in its independent research, has not uncovered any existing precedent that places this issue "beyond debapubliclyte." *Ashcroft*, 563 U.S. at 741. Thus, while, as a general matter, "information regarding one's body and health is a matter which the individual is ordinarily entitled to keep private[,]" *Eastwood*, 846 F.2d at 631, there is an absence of authority that would

put a reasonable state actor on notice that gratuitously advertising sensitive, but soon-to-be publicly available, information such as that contained in Ms. Garcia's text message to one student, would constitute a violation of the constitutionally protected right to informational privacy. Although I.G. undeniably had an interest in minimal publicity of the fact of his victimization, the Court cannot conclude that I.G's constitutional right to informational privacy clearly encompassed the right to avoid the dissemination to one student of soon-to-be publically available information regarding his identity as the victim of the crimes allegedly perpetrated against him by Mr. Kirkland. Nor can the Court conclude on the facts currently pled that Ms. Garcia's private disclosure of I.G.'s private information to a single student on the eve of a public hearing rises to the level of "the most egregious official conduct" that "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. at 846. Ms. Garcia's act which resulted in a student publicly disseminating information about I.G's status as a victim of sexual abuse and advertising Mr. Kirkland's impending first appearance reflects an astonishing lack of sound judgment which may ultimately result in her being held liable under state law, but the Court cannot conclude that existing precedent was such that a reasonable state actor in her position would have understood that such action would run afoul of I.G's constitutionally protected right to informational privacy. Accordingly, Ms. Garcia is entitled to qualified immunity in regard to Plaintiff's substantive due process privacy violation claim.

### iii. <u>Plaintiffs' Claim of Reputational Harm</u>

I.G.'s First Cause of Action also seeks to hold School Defendants liable on a theory that his liberty interest in his good reputation was damaged. (Doc. 1-2 at ¶¶ 31, 34.) Specifically, Plaintiffs allege that I.G. was humiliated as a result of Ms. Garcia's text message, which referred to I.G. as "butt head" and encouraged the class president to get students to attend Defendant

Kirkland's preliminary hearing; that I.G. and his parents[9] were publicly humiliated and their reputations harmed as a result of the "compounding actions" of this text message—*i.e.*, the disruptive student presence at Defendant Kirkland's preliminary hearing and the fact that these events were published in the local newspaper; and that these effects were so damaging to I.G. that he was forced to quit Aztec High School and attend school in another state. (Doc. 1-2 at ¶¶ 16, 20-21.) Plaintiffs allege, further, that "I.G. and his family live in constant reminder of the public shame brought upon them by the one public institution that citizens rely on to protect their children, not traumatize them." (*Id.* at ¶ 21.)

Harm to a person's reputation alone does not qualify as an interest entitled to procedural due process protections. *See Paul*, 424 U.S. at 701 (holding that "the infliction by state officials of a 'stigma' to one's reputation" is insufficient to invoke the procedural protection of the Due Process Clause except where it affects a tangible right to employment); *Goss v. Lopez*, 419 U.S. 565, 574-75 (1975) (holding that the Fourteenth Amendment protects a "student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away . . . without adherence to the minimum procedures required by that clause"); *McGhee v. Draper*, 639 F.2d 639, 643 (10th Cir. 1981) ("[S]tigmatization or reputational damage alone, no matter how egregious, is not sufficient to support a § 1983 cause of action."). Instead, a plaintiff must establish a reputational stigma plus a state imposed burden or alteration of some more tangible interest – such as employment or the right to public education. To state a so-called "stigma-plus" claim, the plaintiff must allege facts which demonstrate that (1) the defendant made a statement impugning his good name,

---

[9]To the extent that Plaintiffs R.G. and L.G. may seek to recover damages in an amended complaint under Section 1983 based on a theory that they, as I.G's *parents,* suffered intrusions into their reputation, public humiliation, or shame, as a result of any as yet to be pled defamatory statements, a failure to allege plausible facts establishing a deprivation of a tangible right – such as the right to employment will be fatal to any attempted amendment. *Paul*, 424 U.S. at 701 (holding that reputational harm, standing alone, is not actionable under the Fourteenth Amendment).

reputation, honor, or integrity; (2) the statement is capable of being proven false and the plaintiff claims it is false; (3) the statement interfered with a constitutionally protected interest; and (4) the statement was published. *See Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994) (stating the requisite elements of a stigma-plus claim in the context of the right to employment); *Kennedy v. Smith*, 259 F. App'x 150, 155 (10th Cir. 2007) (same). "These elements are not disjunctive, all must be satisfied to demonstrate deprivation of the liberty interest." *Workman*, 32 F.3d at 481.

Plaintiff I.G. has failed to state a plausible procedural due process claim under the stigma-plus theory. As an initial matter, the Court observes that I.G. has a constitutionally protected interest in attending a public school within the Aztec school district and of not being deprived of this interest without procedural due process. *Goss*, 419 U.S. at 573 (holding that the appellees "legitimate claims of entitlement to a public education" arose from state law directing local authorities to provide a free public education to age-appropriate residents of the state and from the state's compulsory education law); *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1974) (recognizing, generally, that property interests are not created by the Constitution, but are created instead by independent sources, such a state law); *see* NMSA 1978, Section 22-1-4(A) ("[A] free public school education shall be available to any school-age person who is a resident of this state."); *see also* NMSA 1978, Section 22-12-2 (governing compulsory school attendance); NMSA 1978, Section 22-12-4(A) (providing that school age children in New Mexico have a statutory right to "attend public school within the school district in which [they] reside[] or are present"). Further, assuming the truth of the facts in the Complaint, and viewing those facts in the light most favorable to Plaintiffs, Ms. Garcia's text message to the junior class president in which she disparaged I.G. by referring to him as a "butt head" and encouraging that

student to rally other students to publicly demonstrate support for the teacher who had sexually abused him by carrying signs to the teacher's court appearance effectively impugned I.G's good name, reputation, honor, or integrity. *Workman*, 32 F.3d at 481. However, Plaintiffs have not explicitly alleged that Ms. Garcia (or any Defendant) made a verifiably false statement about I.G. *See id.* (stating that a stigma-plus claim requires that a plaintiff demonstrate that the defendant made a statement about the plaintiff that is capable of being proved false). These pleading omissions alone render Plaintiffs' pleading of this theory inadequate to state a claim on which relief can be granted.

Plaintiffs allege, and the Court assumes it to be true, that Ms. Garcia's text message referred to I.G. as a "butt head," but this insulting moniker seems no more subject to being proved false or true than are other forms of "rhetorical hyperbole" and "vigorous epithets" that defy provability. *See generally Henderson v. Times Mirror Co.*, 669 F. Supp. 356, 360 (D. Colo. 1987) (stating, in the context of a defamation case that "[i]t is difficult to imagine how the defendants could prove that the plaintiff is a 'sleazebag,' or how the plaintiff could prove that he is not, and therefore the statement is . . . incapable of factual proof or disproof[.]"); *Curtis Pub. Co. v. Birdsong*, 360 F.2d 344, 348 (5th Cir. 1966) (stating, in the context of a libel action, that "mere epithets, as terms of abuse and opprobrium" are impossible of being proven or disproven); *see Ewers v. Bd. of Cty. Comm'rs of Curry Cty.*, 802 F.2d 1242, 1249 (10th Cir. 1986) (stating that "for statements to be stigmatizing they must rise to such a serious level as to place the [plaintiff's] good name, reputation, honor, or integrity at stake" such as, for example, charges of dishonesty or immorality); *Asbill v. Hous. Auth. Of Choctaw Nation of Okla.*, 726 F.2d 1499, 1503 (10th Cir. 1984) (emphasizing that a stigma-plus claim requires the plaintiff to demonstrate that the at-issue statements were both "*false* and *stigmatizing*"). Instead, the statement by Ms.

Garcia calling I.G. a "butt head" seems more akin to an opinion than a statement of alleged fact. *See Strasburger v. Bd. of Educ.*, 143 F.3d 351, 356 (7th Cir. 1998) (stigmatizing statements of opinion that do not imply false facts do not support a procedural due process reputational damage claim).

There being insufficient allegations in the Complaint that taken as true would establish that Defendant Garcia or any of the other School Defendants made (1) a provably "false" statement of fact about I.G., (2) that I.G. claims to be false, and which were published by them, Plaintiffs have failed to state a cognizable sigma-plus claim against Defendants. *Workman*, 32 F.3d at 481 (requiring the plaintiff to satisfy each element of the claim to demonstrate deprivation of the liberty interest). Plaintiffs' Complaint and briefing fail to identify any other theories of recovery for reputational harm under the Fourteenth Amendment against the individual School Defendants and the School District, and the Court's own research has uncovered no alternative basis supporting a cognizable claim against these Defendants under the facts presented in Plaintiffs' complaint. Because the Court finds that Plaintiffs' do not state an actionable section 1983 claim against Defendants based on this procedural due process violation theory, the Court will not address the individual School Defendants' assertion of entitlement to qualified immunity. Plaintiff I.G.'s procedural due process claim for reputational harm is accordingly dismissed.

### 2. Plaintiffs' Second Cause of Action

Plaintiffs' Second Cause of Action against the School District and Mr. Carpenter (presumably in his official capacity), alleges that these Defendants were deliberately indifferent to Plaintiffs Fourteenth Amendment rights by their failure to adequately screen, hire, train, and/or supervise Defendants Kirkland and Garcia. (Doc. 1-2 at 10.) As a result, Plaintiffs

allege, I.G. was deprived of his right to be free from intrusions into his bodily integrity and Plaintiffs suffered reputational harm. (Id.) Having concluded that Plaintiffs do not have a viable Fourteenth Amendment claim arising out of the alleged reputational harm or informational privacy violation, the Court does not address this aspect of their Second Cause of Action. Additionally, because Plaintiffs do not allege that Ms. Garcia intruded on I.G.'s bodily integrity, the Court understands Plaintiffs' bodily integrity claim against Mr. Carpenter and the School District to arise solely from Defendant Kirkland's sexual abuse of I.G.

It is well settled that a municipal entity (such as a school district and its officials[10]) "may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [Section] 1983." *Id.* Thus, to establish liability against a municipal entity for harm caused by its employee, "a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged." *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010). Normally, a plaintiff must point to facts outside of his own case to support an allegation of an unconstitutional municipal policy. *Watson v. City of Kansas City, Kansas*, 857 F.2d 690, 695 (10th Cir. 1988).

### i. Municipal Liability Arising out of Screening and Hiring

To the extent that Plaintiffs seek to hold the School District and Mr. Carpenter liable for Defendant Kirkland's sexual abuse of I.G. for a failure to properly screen Defendant Kirkland

---

[10] "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent[.]" *Monell*, 436 U.S. at 690 n.55. Based upon the allegations in the Complaint, the Court understands Plaintiffs' "First Cause of Action" to constitute an individual-capacity claim against Mr. Carpenter (and others), and the "Second Cause of Action" to constitute claim against Mr. Carpenter in his official capacity as the School District's Superintendent.

before hiring him, the allegations in the Complaint are inadequate to support such a theory. "To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. at 410. To hold a municipal entity liable for a single hiring decision, the plaintiff must demonstrate that adequate scrutiny of the applicant's background "would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right[.]" *Id.* at 411. In other words, the plaintiff must prove that the municipal actor was deliberately indifferent to a known or obvious risk that the prospective employee would inflict a particular constitutional injury. *Id.* at 410-11.

Plaintiffs' Complaint is devoid of any allegations regarding the School District's application, screening, and hiring policies or practices. It is also devoid of allegations regarding Defendant Kirkland's background at the time that he applied for a teaching position at Aztec High School. Even assuming that the allegation that Defendant Kirkland's "history of inappropriate social media postings, [and his] constant mixing of school and personal business" preceded his employment at Aztec High School, it is not "plainly obvious" from this fact that if he were hired Defendant Kirkland would sexually abuse a student. (Doc. 1-2 at ¶ 14.) *See generally, D.T. by M.T. v Indep. Sch. Dist. No 16 of Pawnee Cty., Okla.*, 894 F.2d 1176, 1178, 1193 (10th Cir. 1990) (holding that a school district that hired a teacher who had been criminally convicted of "sodomy" could not be held liable for a teacher's sexual abuse of students based on a theory of inadequate screening and hiring practices because in relying on the fact that a teacher convicted of a felony was prohibited from having a teaching certificate, the school district was not deliberately indifferent to and did not recklessly disregard the risk that he would violate

students' constitutional rights). The aspect of Plaintiffs' Second Cause of Action against Mr. Carpenter and the School District that is based upon a theory of negligent application, screening, and hiring practices is dismissed accordingly.

### ii. **Municipal Liability Arising out of Training, Supervision, and Discipline**

Plaintiffs also allege that the School District and Mr. Carpenter failed to train, supervise and/or discipline Defendant Kirkland, and that these failures resulted from "a custom or policy which permitted or condoned [their] deliberate indifference" to Plaintiffs' welfare. (Doc. 1-2 at 10.) Plaintiffs claim that, as a result of such custom or policy, they (presumably meaning I.G.) were deprived of the Fourteenth Amendment right to be free from intrusions into their bodily integrity.

As noted earlier, a municipal entity may only be held liable for deprivations of constitutional rights caused by its employees if the at-issue conduct was undertaken pursuant to an official policy or custom that has been adopted and promulgated by the municipal entity. *Monell*, 436 U.S. at 690-91. A municipal policy or custom may take the form of the failure to adequately train or supervise or discipline its employees. *Varela v. Jones*, 746 F.2d 1413, 1418 (10th Cir. 1984). However, to prevail in a claim against a municipality based upon such a theory, the plaintiff must demonstrate that the municipality's failures reflect "deliberate indifference to the constitutional rights" of the affected population. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989) (stating that Section 1983 claims against a city are only cognizable where the "city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants"). "[D]eliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. at 410.

In the particular context of municipal liability for a school employee's sexual abuse of a student, the Tenth Circuit has held that a plaintiff must demonstrate:

(1) The existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the school district's employees;

(2) Deliberate indifference to or tacit approval of such misconduct by the school districts' policymaking officials . . . after notice to the officials of that particular misconduct; and

(3) That the plaintiff was injured by virtue of the unconstitutional acts pursuant to the board's custom[11] and that the custom was the moving force behind the unconstitutional acts.

*Gates v. Unified Sch. Dist. No. 449 of Leavenworth Cty., Kan.*, 996 F.2d 1035, 1043 (10th Cir. 1993).

Setting aside the vague and generalized allusion in Plaintiffs' Complaint to "a custom or policy which permitted or condoned [the School District's and Mr. Carpenter's] deliberate indifference," Plaintiffs' Complaint is devoid of allegations demonstrating the existence of an actual or constructive policy or custom of inadequate training, supervision, or discipline that reflect a deliberate indifference to a known or obvious risk that Defendant Kirkland would sexually abuse a student. *See Griego v. City of Albuquerque*, 100 F.Supp.3d 1192, 1213 (D.N.M. 2015) (stating that it is inadequate to "simply allege that there is a policy in place"). While Plaintiffs allege that Defendant Kirkland kept I.G. after school, wrote excuses for him, and took him away from school premises during school hours, Plaintiffs do not allege that Mr. Carpenter or any School District official were on notice or knew that this was occurring. Additionally, assuming that Mr. Carpenter and the School District knew about Defendant Kirkland's "inappropriate social media postings" and his "constant mixing of school and personal business,

---

[11] Plaintiffs do not allege that there is a written policy in place that led to the constitutional deprivations complained of in this lawsuit.

including . . . sending students out with his credit cards to buy personal items," these allegations do not demonstrate *unconstitutional* misconduct.[12] *See id.* at 1042 (holding that a school board's knowledge that a teacher had "encouraged" a student who was infatuated with him—conduct that was obviously "inappropriate" but did not rise to the level of a violation of the student's constitutional rights—the school board could not be held liable for the teacher's subsequent sexual abuse of another student). In sum, the allegations in the Complaint are insufficient to plausibly demonstrate that Mr. Carpenter's or the School Board's alleged failures regarding training, supervising, or disciplining Defendant Kirkland amounted to their disregard of a known or obvious risk that Defendant Kirkland would sexually abuse a student. Plaintiff's municipal liability claim against these Defendants based on the failure to train, supervise, or discipline Defendant Kirkland shall be dismissed accordingly.

### 3. **Plaintiffs' Fourth Cause of Action**

In their Fourth Cause of Action Plaintiffs allege that

> Defendants conspired and agreed either expressly and/or tacitly, and under color of law, to deprive Plaintiffs of their rights, privileges, and immunities secured by the Constitution and laws of the United States, including deprivation of the right under the Fourteenth Amendment to substantive due process resulting from intrusions into their bodily integrity and reputation.

(Doc. 1-2 at ¶ 49.) Plaintiffs allege, further, that the conspiracy "placed each Plaintiff in foreseeably dangerous positions that resulted in intrusions into each Plaintiffs' bodily integrity.[13]

(Doc. 1-2 at ¶ 53.) And they allege that as of August of 2016 it was "clearly established that

---

[12] The Court notes that in support of their "Third Cause of Action," Plaintiffs allege "Defendants had actual knowledge of the improper conduct inflicted upon Plaintiffs and others." (Doc. 1-2 at ¶ 45.) This bare and conclusory allegation provided in support of a distinct claim is not presumed true in regard to Mr. Carpenter's and the School District's "actual knowledge" of Defendant Kirkland's sexual abuse of students. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief required more than labels and conclusions"; "[f]actual allegation must be enough to raise a right to relief above the speculative level" (alteration omitted)); *Ashcroft*, 556 U.S. at 680-81 (holding that allegations that the petitioners "knew of" harsh conditions constituted a bald allegation that is not entitled to a presumption of truth).

[13] Again, the allegations in the Complaint do not identify any intrusion of bodily integrity other than that inflicted upon I.G. by Defendant Kirkland.

citizens have the right under the Fourteenth Amendment to be free from conspiracies formed under color of law that affirmatively create, increase or exacerbate a danger to citizens" who "possess a right to be free from deprivations of their right to substantive due process resulting from intrusions into their bodily integrity and reputation." (Doc. 1-2 at ¶ 56.)

Plaintiffs' Fourth Cause of Action appears to be grounded in 42 U.S.C. Section 1985(3) which, in relevant part, provides that

> [i]f two or more persons ... conspire ... for the purpose of depriving . . . any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . [or] cause to be done, any act in furtherance of the object of such conspiracy . . . the party so injured or deprived may have an action for the recovery of damages[.]

Section 1985(3) "does not apply to all tortious, conspiratorial interferences with the rights of others, but rather, only to conspiracies motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). "The other 'class-based animus' language of this requirement has been narrowly construed," *id.*, and our Supreme Court has questioned whether Section 1985(3) "was intended to reach any class-based animus other than animus against [African Americans] and those who championed their cause[.]" *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 836 (1983) ("The central theme of the bill's proponents was that the [Ku Klux] Klan and others were forcibly resisting efforts to emancipate [African Americans] and give them equal access to political power. The predominate purpose of § 1985(3) was to combat the prevalent animus against [African Americans] and their supporters."). Further, Section 1985(3) only covers conspiracies that are "aimed at interfering with rights that are protected against private, as well as official, encroachment." *Tilton*, 6 F.3d at 686. Thus, to state a claim under Section 1985(3) "for a non-racially motivated private conspiracy, if indeed such a claim

can be stated, it is necessary to plead" among other things, that: (1) "the conspiracy is motivated by a class-based invidiously discriminatory animus[,]" and (2) "the conspiracy is aimed at interfering with rights that by definition are protected against private, as well as official, encroachment." *Tilton*, 6 F.3d at 686. As to the latter, "[t]here are few rights protected against private, as well as official, encroachment"; and our Supreme Court has recognized only two— namely, "the Thirteenth Amendment right to be free from involuntary servitude, and, in the same Thirteenth Amendment context, the right of interstate travel." *Tilton*, 6 F.3d at 686.

The allegations in Plaintiffs' Complaint do not state a plausible claim for relief under Section 1985. Plaintiffs have not alleged that Defendants were motivated by discriminatory animus based on Plaintiffs' membership in a protected class, nor have they alleged a conspiracy aimed at interfering with rights that are protected against private as well as official encroachment. Plaintiffs have alleged only that a conspiracy was aimed at the deprivation of the right to substantive due process—a right guaranteed against state interference, but not against private infringement. *Tilton*, 6 F.3d at 687 (recognizing that the Fourteenth Amendment "does not . . . shield against . . . private conduct however discriminating or wrongful"). Plaintiffs' Fourth Cause of Action shall be dismissed accordingly.

### C. PLAINTIFFS' TITLE IX CLAIM

Plaintiff's "Third Cause of Action" is brought against the School Board pursuant to the Fourteenth Amendment and 20 U.S.C. Section 1681 et seq. (Title IX). To the extent that this claim restates claims raised in Plaintiff's First and Second Causes of Action, the Court does not repeat its analysis of those issues. (See Doc. 1-2 at ¶¶ 43-44) The Court focuses, instead, on Plaintiffs' Title IX claim.

### 1. <u>The Law Governing Title IX Claims</u>

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]"   20 U.S.C. § 1681(a).  "Title IX is . . . enforceable through an implied private right of action," and "monetary damages are available in the implied private action."  *Gebser v. Largo Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998).  Title IX may be enforced only against the recipient of federal funds and the funding recipient may only be liable in damages under Title IX for its own misconduct. *Davis ex rel. Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 640 (1999). Thus, in order to be held liable under Title IX, the funding recipient *itself* must have, on the basis of sex, acted to exclude a person's participation in, deny a person the benefits of, or subject a person to discrimination under an education program or activity that receives federal financial assistance.  *Davis*, 526 U.S. at 640-41.

### 2.   Plaintiffs' Title IX Claim Based Upon Sexual Abuse

In the context of sexual abuse of a student by a teacher, Title IX permits a plaintiff to recover damages against a school district if he demonstrates that an "appropriate person" (meaning a school district official with authority to take corrective action) had actual notice of the sexual abuse and responded in a deliberately indifferent manner.  *Gebser*, 524 U.S. at 285, 290.  "[A]ctual notice requires more than a simple report of inappropriate conduct by a teacher" however, "the actual notice standard does not set the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student." *Escue v. N. OK Coll.*, 450 F.3d 1146, 1153–54 (10th Cir. 2006); *see Gebser*, 524 U.S. at 291 (holding that a high school principal's knowledge that a teacher had made inappropriate

comments during class "was plainly insufficient to alert the principal to the possibility that [the teacher] was involved in a sexual relationship with a student").

Plaintiffs allege that "Defendants had actual knowledge of the improper conduct inflicted upon Plaintiffs and others, had the authority to address such misconduct but failed to adequately respond[,]" and that "[t]heir conduct amounted to deliberate indifference to the discrimination against and harassment of Plaintiffs." (Doc. 1-2 ¶ 45.) These allegations merely recite the elements required to state a claim for sexual abuse under Title IX and are devoid of further factual enhancement to state a plausible claim that an "appropriate person" actually knew, and was deliberately indifferent to the fact that Defendant Kirkland was sexually harassing or sexually abusing I.G. *Ashcroft*, 556 U.S. at 678 ("A pleading that offers labels and conclusions[,] . . . a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement" does not plausibly state a claim upon which relief can be granted.). To the extent that Plaintiffs also seek to recover under Title IX based on the allegation that Defendants did not have policies addressing issues of sexual abuse or the handling of improper conduct, this alleged failure is not actionable under Title IX. *Gebser*, 524 U.S. at 291-92 (holding that Title IX recovery is not available for a violation of administrative requirements such as adopting and publishing grievance procedures for discrimination complaints because "the failure to promulgate a grievance procedure does not itself constitute 'discrimination' under Title IX").

### 3.  Plaintiffs' Title IX Claim Based Upon Retaliation

Title IX's enforcement scheme depends on individual reporting because, as noted earlier, individuals may not bring suit under the statute unless the school has received "actual notice" of the discrimination. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 181 (2005) ("Title IX's

enforcement scheme . . . depends on individual reporting because individuals and agencies may not bring suit under the statute unless the [school] has received 'actual notice' of the discrimination."). "If recipients were able to avoid such notice by retaliating against all those who dare complain, the statute's enforcement scheme would be subverted." *Id.* Thus, "[r]eporting incidents of discrimination is integral to Title IX enforcement and would be discouraged if retaliation against those who report went unpunished." *Jackson*, 544 U.S. at 180. Accordingly, in addition to its prohibition of, and right of action for, sex discrimination by recipients of federal education funding, Title IX encompasses, and provides a right of action for retaliation. *Jackson*, 544 U.S. at 171, 173 ("Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action.").

While our Tenth Circuit has not set forth the elements of a retaliation claim under Title IX, Courts that have addressed this issue have relied on Title VII standards. *Higgins v. Saavedra*, No. CIV 17-0234 RB/LF, 2018 WL 327241 *9 (D. N.M. Jan. 8, 2018) (unpublished). Thus, to state claim of retaliation, the plaintiff must allege that he complained of sexual harassment; that school officials knew he had done so; and that because of the complaint, materially adverse school-related action was taken against him. *Id.*; *Yan Yan v. Penn State Univ.*, 529 F. App'x. 167, 171 (3rd. Cir. 2013); *Papelino v. Albany Coll. Of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d. Cir. 2011).

Viewed in the light most favorable to Plaintiffs, it is obvious from the allegations in the Complaint that I.G. complained of the sexual abuse perpetrated upon him by Defendant Kirkland because Defendant Kirkland was criminally charged with the crimes he committed against I.G. (Doc. 1-2 at ¶ 16.) It is also obvious that school officials, including Mr. Carpenter—the School

District's Superintendent knew that I.G. had so complained because Mr. Carpenter refused to exempt I.G. from the grades requirement for participating in sports notwithstanding the possibility that I.G.'s grades had suffered *because* of the sexual abuse, and because Mr. Carpenter was aware of Ms. Garcia's text message to the junior class president related to Defendant Kirkland's initial court appearance.  (Doc. 1-2 ¶¶ 15, 18.)  Finally, Plaintiffs have alleged a causal connection between I.G.'s report of sexual abuse and materially-adverse school-related action—particularly, Ms. Garcia's text message to the junior class president instructing him to gather "as many students as possible and make signs supporting [Defendant Kirkland]" and providing instructions as to how to get an excuse for school to attend Defendant Kirkland's preliminary hearing.  (Doc. 1-2 at ¶ 16.)  *See Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1091 (10th Cir. 2007) ("A causal connection is established where the plaintiff presents evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.").  Based upon the foregoing, the Court concludes that the allegations in the Complaint are sufficient to state a plausible prima facie case of retaliation under Title IX.  This claim is not subject to dismissal under Rule 12(b)(6).[14]

### D.  PLAINTIFFS' FERPA AND HIPAA CLAIM

In their Fifth Cause of Action Plaintiffs seek damages for alleged violations of I.G's rights of privacy under the Family Educational Rights and Privacy Act of 1974, (commonly called "FERPA") which prohibits the federal funding of educational institutions that have a policy or practice of releasing education records to unauthorized persons, *Gonzaga Univ. v. Doe*, 536 U.S. 273, 276 (2002), and the Health Information Portability and Accountability Act of 1996, (commonly called "HIPAA"), which governs the uses and disclosures of protected health

---

[14] The Court observes that Defendants have not expressly sought dismissal of Plaintiffs' Title IX retaliation claim. Defendants have, however, sought dismissal of Plaintiff's Title IX claim, generally.  (Doc. 8 at 24.)

information, *Harrison v. Univ. of Colo. Health Sciences Ctr.*, 337 F. App'x 750, 754 (10th Cir. 2009). Neither FERPA nor HIPAA creates a private right of action for alleged disclosures of confidential information, nor are FERPA and HIPAA violations redressable under 42 U.S.C. Section 1983. *See Gonzaga Univ.*, 536 U.S. at 287 (holding that that FERPA's nondisclosure provisions do not confer individual rights that are enforceable under Section 1983); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 ("HIPAA does not create a private right of action for alleged disclosures of confidential medical information."); *Thompson v. Larned State Hosp.*, 597 F.App'x 548, 550 (10th Cir. 2015) (unpublished) (recognizing that although the Tenth Circuit has not "squarely addressed alleged HIPAA violations in the context of a [Section] 1983 action," the Eighth and Ninth Circuit Courts of Appeal have held "HIPAA violations cannot be remedied through a [Section] 1983 action"). Plaintiff's reliance on New Mexico's Public Health Act, NMSA 1978, Section 24-1-20, which criminalizes the disclosure of confidential health information, but does not provide for a private right of action, is equally unavailing. *See* NMSA 1978 § 24-1-20(F), (providing that "[a]ny person who [improperly] discloses confidential information . . . is guilty of a petty misdemeanor); NMSA 1978 § 24-1-21 (governing the penalties for violation of the Public Health Act or any order, rule, or regulation adopted pursuant to its provisions). Plaintiffs' Fifth Cause of Action shall be dismissed accordingly.

### E. PLAINTIFFS' NEW MEXICO TORT CLAIMS ACT CLAIMS

In New Mexico, governmental entities and public employees acting within the scope of duty are generally immune from tort liability. NMSA 1978, Section 41-4-4(A). Exceptions to this broad grant of immunity are limited to those specifically enumerated in Sections 41-4-5 through 41-4-12 of the New Mexico Tort Claims Act (NMTCA). NMSA 1978, Section 41-4-1 through 41-4-27, 41-4-4(A); *Encinias v. Whitener Law Firm, P.A.*, 310 P.3d 611, 616 (N.M.

2013) ("In general, the state is immune from tort suits.").  Of relevance here, the NMTCA waives immunity for the negligence of public employees "while acting within the scope of their duties in the operation or maintenance of any building[.]"  NMSA 1978, Section 41-4-6.[15]

## 1.  **Plaintiffs' Sixth, Seventh and Eighth and Ninth  Causes of Action**

In their remaining causes of action, Plaintiffs seek to hold Defendants liable under the NMTCA for the physical harm perpetrated against I.G. by Defendant Kirkland, as well as for the reputational harm and privacy invasions suffered by Plaintiffs.  In their Sixth Cause of Action, Plaintiffs allege that "Defendants" breached a duty to protect their privacy and the integrity of their reputations (Doc. 1-2 ¶ 63); that Defendants breached a duty to exercise reasonable care in the maintenance of the premises in a safe condition and to "supervise" (Doc. 1-2 ¶ 64); that Defendants breached a duty to implement proper safety policies and procedures in connection with the planning and implementation of the theater class and its premises (Doc. 1-2 at ¶ 65); and that Defendants breached a duty to implement safety protocols on "the premises" generally (Id.).

In their Seventh Cause of Action, Plaintiffs allege that the School Board and Mr. Carpenter breached a duty to supervise Defendant Kirkland and "to properly screen, hire, train, supervise and monitor employees to ensure that they were competent to reasonably care for the students" (Doc. 1-2 at ¶ 69); that they breached a duty to provide appropriate policies and procedures "to the Coaches" to assure that they were not allowing a dangerous condition to exist on and off the premises for school activities (Doc. 1-2 at ¶ 70); and that they breached a duty to

---

[15] The remaining exceptions to sovereign immunity—for the negligent operation or maintenance of any public park, machinery, equipment or furnishing (NMSA 1978, Section 41-4-6); of a motor vehicle, aircraft or watercraft (NMSA 1978, Section 41-4-5); of airports (NMSA 1978, Section 41-4-7); of public utilities including gas, electricity, water, waste collection, heating, and ground transportation (NMSA 1978, Section 41-4-8); the negligent operation of medical facilities (NMSA 1978, Section 41-4-9);  negligent provision of health care services (NMSA 1978, Section 41-4-10); negligent construction or maintenance of highways and streets (NMSA 1978, Section 41-4-11); and certain enumerated torts caused by law enforcement officers (NMSA 1978, Section 41-4-12), have no discernible bearing on the issues presented in the Complaint as pled.

properly screen, hire, train, monitor, supervise, and/or discipline "the Coaches" by failing to adopt appropriate safety and privacy policies, procedures and protocols (Doc. 1-2 at ¶ 71.)

In their Eighth Cause of Action, Plaintiffs allege that the School Board and Mr. Carpenter "conspired and agreed with one another to commit the wrongful acts" described in the Complaint "including, but not limited to, covering up and concealing the wrongdoing which had resulted in the injuries to Plaintiffs (Doc. 1-2 at ¶¶ 73-76.)

Finally, in their Ninth Cause of Action, Plaintiffs allege that the School Board is jointly and severally liable for the wrongful actions of its employees under a theory of supervisory liability.  (Doc. 1-2 at ¶¶ 77-78.)

### i.  <u>Certain Aspects of Plaintiffs' Complaint Are Dismissed Summarily</u>

As an initial matter, the Court shall dismiss Plaintiffs' Sixth Cause of Action insofar is it pertains to Plaintiffs' privacy, reputation, and intentional torts brought under the New Mexico Tort Claims Act; Plaintiffs' Seventh Cause of Action insofar as it pertains to "coaches"; and Plaintiff's Eighth Cause of Action in its entirety.  Plaintiffs' reference to "coaches" in their Seventh Cause of Action, having no ostensible connection with any of the factual allegations in Plaintiffs' Complaint, appears to the Court to have been included in the Complaint by mistake. This claim does not warrant further consideration.  Should Plaintiffs determine that pertinent allegations regarding "coaches" were erroneously omitted from their Complaint, they are free to move to amend the Complaint as they deem necessary. Further, the NMTCA does not waive immunity for claims pertaining to privacy and reputation, to intentional torts, or to claims of conspiracy.  *See* Section 41-4-6(A) (limiting the waiver of liability for the negligent operation or maintenance of a building to circumstances in which the negligence of public employees results

in "bodily injury, wrongful death, or property damage").[16]  These claims shall be dismissed accordingly.

### ii.  Analysis of Plaintiffs' Remaining NMTCA Claims

To prevail in their remaining claims under the NMTCA, Plaintiffs will be required to prove that the physical harm suffered by I.G. was caused by the negligence of each Defendant against whom they seek to state a claim in the operation or maintenance of Aztec High School. "Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages." *Herrera v. Quality Pontiac*, 73 P.3d 181, 185-86 (N.M. 2003).  An act that is "negligent" is one that "a reasonably prudent person would foresee as involving an unreasonable risk of injury . . . to another and which such a person, in the exercise of ordinary care, would not do." *Bober v. New Mexico State Fair*, 111 N.M. 644, 648 (N.M. 1991).  Negligence may also take the form of a failure to act—as where a party fails "to do an act [that he or she] is under a duty to do and [that] a reasonably prudent person, in the exercise of ordinary care, would do in order to prevent injury to . . . another." *Id.*

The New Mexico Supreme Court has held that Section 41-4-6(A) is essentially a "premises liability statute" the scope of which may be informed by principles derived from

---

[16]Although Plaintiffs' introductory paragraph of the Complaint indicates the causes of action are also brought under New Mexico common law, and while New Mexico law recognizes a cause of action in tort for invasion of privacy, Plaintiffs' causes of action under state law are explicitly pled as being brought under the New Mexico Tort Claims Act.  Thus, the Complaint as presently pled does not state a  cause of action satisfying notice pleading requirements falling outside of the Tort Claims Act against Defendant Garcia or any other Defendant as private citizens for the tort of invasion of privacy.  The Court notes that Plaintiffs both argue that Defendant Garcia cannot "claim that she was acting within the scope of her discretionary authority when she incredibly reached out on social media to . . . interfere with a criminal prosecution of a victimizing teacher,"  [Doc 19 at 2], in contravention of a state actor theory,  and characterize her conduct as "a school intentionally reaching out to thousands of students and rallying them to defend a teacher who sexually molested a student,"  [Id. at 8], supporting a state actor theory.  To the extent that Plaintiffs may have intended to assert an alternative tort claim against Defendant Garcia in her private citizen capacity, the Complaint as presently pled fails to do so.

traditional tort concepts. *Encinias*, 310 P.3d at 616-17. Therefore, "the facts of a case will support a waiver under Section 41-4-6(A) if they would support a finding of liability against a private property owner." *Encinias*, 310 P.3d at 618 (relying on the Restatement (Second) of Torts, § 344, which pertains to a business owner's duty to the business's patrons, in considering the scope of a school district's duty to protect students from student-on-student violence on school grounds). The waiver contemplated in Section 41-4-6(A) is not "limited to injuries resulting from a physical defect on the premises" nor is it "limited to injuries occurring on the defendant's property." *Encinias*, 310 P.3d at 616; *see generally Bober*, 808 P.2d at 619 ("[T]he location of the [incident] is not relevant to the question of duty.").

Pursuant to traditional tort concepts, and as a matter of New Mexico tort law, a business proprietor may be liable for an assault on a business invitee by an employee if, by the exercise of reasonable care, the proprietor could have discovered that the tortious conduct was being done or was about to be done, and could have protected against the injury by controlling the conduct of the employee. *Valdez v. Warner*, 742 P.2d 517, 519 (N.M. Ct. App. 1987); *see also Pittard v. Four Seasons Motor Inn, Inc.*, 688 P.2d 333, 340 (N.M. Ct. App. 1984) (holding that a hotel proprietor might be held liable for a sexual assault of a patron by one of its employees on the hotel's premises where the defendant was aware or should have been aware that the employee had a propensity for violence and a drinking problem). This principle applies, as well, to governmental entities—including public schools. *See Encinias*, 310 P.3d at 618-19 (indicating that the operative principles that justify holding business proprietors liable in tort apply to governmental entities in the operation and maintenance of school premises).

Additionally, a governmental entity may be held liable under Section 41-4-6(A) where it fails to implement safety policies or take safety measures necessary to protect the people who

use the public premises against foreseeable harm. *Upton v. Clovis Mun. Sch. Dist.*, 141 P.3d 1259, 1261-63 (N.M. 2006) (recognizing that liability may be waived under Section 41-4-6(A) for a school's failure to implement and enforce safety procedures for various emergencies which measures are inherent in the safe, reasonable, and prudent operation of a school building); *Leithead v. City of Santa Fe*, 940 P.2d 459, 463 (N.M. Ct. App. 1997) (holding that a governmentally-operated swimming pool that is not equipped with adequate number of lifeguards and, comparably, with adequate safety equipment constitutes a dangerous condition on the premises that could subject the government to liability under Section 41-4-6(A)); *Castillo v. Santa Fe Cty.*, 755 P.2d 48, 50-51 (N.M. 1988) (holding that a public housing authority could be held liable under Section 41-4-6(A) for a breach of duty to maintain a common area of a public housing project if the presence of loose running dogs in the common area presented a foreseeable threat to the safety of residents and invitees); *Callaway v. N.M. Dep't of Corr.*, 875 P.2d 393, 400 (N.M. Ct. App. 1994) (holding that the department of corrections could be held liable under Section 41-4-6(A) for failing to take measures to prevent foreseeable harm to inmates caused by roaming gang members with a propensity for violence who had access to potential weapons in the recreation area of a prison). Finally, although a claim of negligent supervision, standing alone, is not sufficient to bring cause of action within the waiver of immunity created by Section 41-4-6," "a claim that involves elements of negligent supervision can still fall under the waiver if that supervision is directly tied to the operation . . . of the building." *Upton*, 141 P.3d at 1263.

Returning to the allegations in the Complaint, Plaintiffs do not allege facts plausibly demonstrating that Section 41-4-6(A) gave rise to Ms. Garcia's duty of ordinary care in the operation or maintenance of Aztec High School. The allegations do not support the notion that Ms. Garcia was in a position of authority over Defendant Kirkland or that she had any

involvement in the implementation or maintenance of safety policies and procedures at Aztec High School. Plaintiffs' NMTCA claims against Ms. Garcia in Plaintiffs' Sixth Cause of Action shall be dismissed accordingly.

As to Mr. Carpenter—in the scope of his duty as the School District's Superintendent[17] and as to the School Board, however, the allegations in Plaintiffs' Complaint state a plausible claim of liability under Section 41-4-6(A). Viewed in the light most favorable to Plaintiffs, the allegations (which are presumed true) demonstrate that the School District acting through Mr. Carpenter was responsible for the administration of Aztec High School. (Doc. 1-2 at ¶ 2.) Mr. Carpenter had final policy and decision-making authority regarding the school's policies and its teaching program. (Id.) As a general matter, in operating and maintaining Aztec High School, Mr. Carpenter and the School Board had a duty to exercise ordinary care vis a vis the physical safety of the school's students. Section 41-4-6(A); *Encinias*, 310 P.3d at 618-19 (recognizing that a school district and its principal have a duty to protect students from foreseeable harm arising from dangerous conditions on school premises); *Upton*, 141 P.3d at 1261-63 (recognizing that a school district has a duty to operate a school in a safe, reasonable, and prudent manner).

The viability of Plaintiffs' Complaint thus depends specifically upon whether Defendant Kirkland constituted an "unsafe condition" on the premises of Aztec High School. *See Castillo*, 755 P.2d at 51 (stating that the existence of a duty under the circumstances of that case turned upon the issue of "whether dogs roaming loose upon the common grounds of a government-operated residential complex could represent an unsafe condition"). This inquiry depends, in turn, upon whether the School District, through Mr. Carpenter reasonably "should have discovered and could have prevented" Defendant Kirkland from harming a student. *Encinias*,

---

[17] Designations of "individual" versus "official" capacity are not relevant in the context of the NMTCA. *Vigil v. State Auditor's Office*, 116 P.3d 854, 858 (N.M. Ct. App. 2005).

310 P.3d at 619 ("The government does not have the duty to do everything that might be done . . . but it can be liable for the violent acts of a third party if [it] reasonably should have discovered and could have prevented the incident.").

Plaintiffs' claims against Mr. Carpenter and the School Board are premised on theories of failure to properly screen, hire, and monitor the school's employees, and a failure to follow and implement appropriate safety procedures regarding the theater class and the High School, generally. (Doc. 1-2 at ¶¶ 65, 69.) In that regard, Plaintiffs allege that Mr. Carpenter was Defendant Kirkland's immediate supervisor. (Doc. 1-2 at ¶ 3.) By extension, it is reasonable to infer that Mr. Carpenter had the authority to control Defendant Kirkland's conduct by reprimanding him, disciplining him, or terminating his employment. Mr. Carpenter knew that Defendant Kirkland had a history of failing to observe appropriate boundaries with students as evidenced by his propensity to mix school and personal business, sending students out with his credit cards to buy personal items, and his "inappropriate" social media postings. (Doc. 1-2 at ¶ 14.) Additionally Defendant Kirkland engaged in grooming behavior with regard to I.G. over a period of time—which behavior included keeping I.G. "long after school was out" under the guise of necessity for the theater program, sending signed excuses home with I.G. to account for his whereabouts, and taking I.G. off campus during school hours. (Doc. 1-2 at ¶ 13.) Although Plaintiffs do not allege that Mr. Carpenter knew about this conduct, it is reasonable to assume that school officials could, in the exercise of ordinary care, discover a teacher's pattern of writing illegitimate or questionable excuses on behalf of a particular student over a period of time.

Unquestionably failing to supervise, reprimand, discipline, or terminate teachers who openly exhibit a pattern of inappropriate boundary-crossing in regard to students, who take students off campus during school hours without appropriate reasons for doing so, and who write

illegitimate excuses for students to detain them after school does not accord with the duty to operate a school in a safe, reasonable, and prudent manner. *See Upton*, 141 P.3d at 1263 (stating that "a claim that involves elements of negligent supervision can come within the waiver of Section 41-4-6 if the allegedly negligent supervision is directly tied to the operation of the building).

Additionally, to the extent that the school policies were such that Defendant Kirkland was permitted to engage in such activities as taking students off campus without parental permission, Plaintiffs may succeed in persuading a jury that the School Board was negligent in implementing safety protocols necessary for the safe operation of a school. *See, e.g., Leithead*, 940 P.2d at 464-65 (recognizing that the failure to implement a policy requiring on-duty lifeguards at public swimming pool would create an obvious danger to the swimming public from which a jury could reasonably determine that the City negligently operated a pool); *Upton*, 141 P.3d at 1263 (recognizing that failing to implement an appropriate fire exit procedure could constitute negligence in the operation of a school). Alternatively, in the more likely event that that school policy prohibited the type of conduct that Defendant Kirkland openly engaged in, Plaintiffs may succeed in persuading a jury that, by failing to remedy Defendant Kirkland's conduct, Mr. Carpenter placed students at risk of a foreseeable injury. *See generally*, *Valdez*, 742 P.3d at 519 (stating that a business proprietor may be held liable for failing to control the conduct of an employee where the prospect of the employee's conduct could be discovered by an exercise of reasonable care); *Pittard*, 688 P.2d at 340 (holding that a hotel proprietor might be held liable for a sexual assault of a patron by one of its employees on the hotel's premises where the defendant was aware or should have been aware that the employee had a propensity for violence and a drinking problem). In sum, Plaintiffs have stated a plausible claim of liability against the School

Board and Mr. Carpenter under the NMTCA. Plaintiffs' Sixth, Seventh, and Ninth Causes of Action, to the extent that they are premised on a theory of the School Board's and Mr. Carpenter's negligent operation of Aztec Highs School, shall not be dismissed.

**IV.     CONCLUSION**

For the reasons stated herein, Defendants Board of Education of the Aztec Municipal School Board, Kirk Carpenter and Kimberly Garcia's Motion to Dismiss and for Qualified Immunity and Memorandum in Support Thereof (Doc. 8), filed February 14, 2018 is **GRANTED in Part** and **DENIED in Part** as follows:

1) Plaintiff R.G.'s and L.G.'s individual claims are dismissed without prejudice in their entirety and they are granted thirty days from the date of this Memorandum Opinion and Order's entry to seek leave to file an amended complaint.

2) Plaintiff I.G.'s First Cause of Action as against the School Defendants is DISMISSED.

3) Plaintiff I.G.'s Second Cause of Action is DISMISSED.

4) Plaintiff I.G.'s Third Cause of Action is NOT DISMISSED as to his Title IX Claim of Retaliation against the School Board; and is DISMISSED as to the remaining theories therein.

5) Plaintiff I.G's Fourth Cause of Action is DISMISSED.

6) Plaintiff I.G.'s Fifth Cause of Action is DISMISSED.

7) Plaintiff I.G.'s Sixth Cause of Action is DISMISSED insofar as it pertains to Ms. Garcia, and insofar as it rests upon theories of reputational harm, privacy, and intentional torts. It is NOT DISMISSED insofar as it pertains to the School Board

and Mr. Carpenter's duty to maintain Aztec High School in a safe condition as discussed in the body of this Opinion.

8) Plaintiff I.G.'s Seventh Cause of Action is DISMISSED insofar as it pertains to "coaches." It is otherwise NOT DISMISSED.

9) Plaintiff I.G.'s Eighth Cause of Action is DISMISSED.

10) Plaintiff I.G's Ninth Cause of Action is NOT DISMISSED.

**IT IS SO ORDERED.**

**KIRTAN KHALSA**
**United States Magistrate Judge**